# COURT OF GENERAL SESSIONS.

THE STATE *vs.* JOHN J. HORNER and JOHN T. SPRING.

New Castle County, February Term, 1893.

**Obstructing Public Justice.**—A person who induces another who has once been a witness before a Grand Jury and is anticipating a second summons in the same case to absent himself from the jurisdiction of the court is guilty of obstructing public justice.

**Evidence. Accomplice.**—The testimony of an accomplice ought to be received with great caution, and while the jury may they ought not to convict the accused upon the testimony of an accomplice alone, unless that testimony is corroborated in some one material point.

**Character.**—If the jury are in doubt as to the guilt of the accused then they may take into consideration testimony as to his good character,

**Reasonable Doubt.**—If the jury have a reasonable doubt as to the guilt of the accused they should acquit him.

The defendants were indicted for an attempt to obstruct public justice. The facts shown by the evidence for the State were substantially these:

On or about the 29th day of June one James W. Horner was charged before the municipal court with selling intoxicating liquors to Jerry Sullivan, a minor, and was then required to and did enter into recognizance " to be and appear before the next Court of General Sessions of the Peace and Gaol delivery to be held at Wilmington in and for New Castle county," there to answer said charge. At the

same time Jerry Sullivan, the minor to whom the liquor was alleged to have been sold by said James W. Horner, also entered into a recognizance to appear at said court, as stated therein, "as a witness in the case of the *State vs. James W. Horner*, selling liquors to minors." The September term was the then next term of the Court of Genral Sessions for New Castle county, and Jerry Sullivan appeared at the court and testified before the Grand Jury, and upon his testimony, with that of others, a true bill of indictment was found against James W. Horner for the offence of selling liquor to a minor.

The case was not tried at that term, but was continued to the November term. At the November term James W. Horner pleaded guilty to the indictment. But in the meantime, as Jerry Sullivan says, he, at the suggestion of Charles H. Clayville, a police officer in this city, met John J. Horner, one of the defendants.

Horner asked him if he had anything against Jim. He answered, "No; I have nothing against Jim." "Well," said Horner, "How would you like to make it easy on him?" and asked him how he would like to go away until after court, and said: "Then go away until after this November court is over." Witness said he did not know; he was under bail. They then parted after making an engagement to meet there that night. In the evening John T. Spring, the other defendant, met witness instead of John J. Horner, and went with him to Horner's barber shop in this city. There Horner called him aside and said in a whisper, "Jerry, did you make up your mind yet?" Witness said no he had not made up his mind. Horner said to him, "I will give you $25 to go away until after court," and said, "When you are away you write to me or Jim; if you want any more money we will send it to you." By "Jim" the witness says he understood John J. Horner's brother James W. Horner. To that offer the witness replied, "All right," but said also that he didn't know. During the conversation Horner asked Spring, "When do the warrants come out?" Spring said he didn't know, but that he would go up to the Court House and find out. Then John T. Spring, one of the defendants, and

witness left the barber shop and made an appointment to meet again at six o'clock the next evening.

They met at the time and place appointed and went to the depot, where Spring gave witness two sums of $5 each and witness bought a ticket for Philadelphia and left for that city and New York. In consequence of a message he received while in New York, Sullivan returned to Wilmington.

At the trial during the direct examination of W. Pierce Biggs, Clerk of the Peace, *Nicholson,* Attorney General, offered in evidence a subpœna duly issued September 14, 1892, in the case of *The State vs. John W. Horner,* for Jerry Sullivan, Charles Shuman, Frank Coffin and Julia Sullivan, returnable to the September term. Also a subpœna duly issued November 18, 1892, to the November term, 1892, for the same persons. He also offered in evidence recognizances of both defendants dated November 29 and 30, 1892.

*Ward,* for the defendants objected to the admission of the subpoena dated November 18, 1892, on the ground that there was no allegation in the indictment that any subpoena was issued; also upon the ground that the spiriting away of the witness is alleged to have taken place on November 16th and this subpoena was issued upon November 18th, so that it is immaterial. He further objected to the admission of all the subpoenas introduced, for the reason that it did not appear that they were attested as of any date when the Court of General Sessions was in session.

The Attorney General replied that he expected to show that the subpoenas were about to be issued at the time of spiriting away of this witness; also that one of the defendants was about the court house and went to ascertain if the subpoenas were to be issued, from the Clerk of the Peace upon a certain day, therefore he considered it relevant to produce the subpoenas and show that they actually were issued afterwards.

ROBINSON, C. J.   We think they are admissible.

The Attorney General also offered in evidence during the

examination of the same witness the docket of the Court of General Sessions of the Peace and Jail delivery for the purpose of showing that there was a case to be tried for which witnesses were to be summoned and that there was a continuance from the September to the November term.

*Ward*, for the defendants, objected, but ROBINSON, C. J., said that it was admissible, and that the record was admitted in a similar case; *State vs. Early*, 3 .Harring. 562. Whereupon the objection was withdrawn and the book admitted.

Jerry Sullivan, the witness, who, it was alleged, had been induced to go away, being under examination, was asked by *Nicholson*, Attorney General, whether he was bound over at the Municipal Court as a witness for the September term of this court.

*Ward*, for the defendants, objected on the ground that the best evidence is the paper itself, and also that there was no allegation in the indictment that he was bound over at the Municipal Court.

ROBINSON, C. J. The recognizance is the best evidence, and on that ground the objection is sustained.

The same witness was asked by the Attorney General if while he was in New York he got any message from Wilmington, to which he replied affirmatively.

*Ward*, for the defendants, inquired what it was intended to prove, and it further appeared from the statements of the Attorney General that he proposed to show why he got back and to offer in evidence an anonymous message received by him, which was objected to, and the objection was sustained.

While the same witness was under cross-examination, being asked whether he had a conversation with Charles H. Clayville, a police officer of Wilmington, at Eleventh and Church streets shortly before the present term of court, he replied affirmatively,

whereupon he was asked by *Ward*, for the defendants, this further question :

Q. Did this conversation take place, or conversation to this effect, upon that occasion. Did Clayville say to you, " Sullivan, I heard you had gone away ? " Did you then answer, " No, I want to go away to Chicago, I want to bleed Jim Horner out of money enough to go."

*Nicholson*, Attorney General, objected to the relevancy of the question; *Ward* stated that his object was to show that the solicitation was from the other side, that this man had a design upon James W. Horner, and that he put it into effect by soliciting that he may be sent away, and that he asked Clayville to take him to John J. Horner's, as he wanted to see him and didn't know where he lived.

ROBINSON, C. J. What is your next question?

*Ward.* My next question would be whether on the next day or so after that occasion he recollects going to Clayville's house and asking him to take him around to Horner's. It is put for the purpose of contradiction, and it seems to me to be pertinent.

ROBINSON, C. J. The Court think that the first question is not admissible, but that the second question is.

Samuel S. Adams, clerk of the Municipal Court, of Wilmington, being under examination in chief, the recognizance of Jerry Sullivan, dated June 29, taken in that court to appear at the September term of this court was offered in evidence.

*Ward*, for the defendants, objected, on the ground that there was no allegation in the indictment which corresponded to the recognizance; and that to make it admissible, the recognizance entered into at the Municipal Court must have been shown to have had a continuing force until the November term of the Court of General Sessions. He cited Archbold, Crim. Pr. & Pl. 265, upon the matter of definiteness of statement in the indictment, the word

"court" having been omitted in describing the "Municipal Court"
in the indictment.

*Nicholson,* Attorney General, replied. It is alleged in the
indictment that there was a recognizance, and it is only necessary
to prove that it was taken before a competent tribunal. All the
facts of the indictment must be taken together and they would cure
the error. The allegation is not material inasmuch as it was alleged
that Jerry Sullivan was under subpœna.

ROBINSON, C. J.: Without deciding as to whether this aver-
ment is so entirely immaterial that it could be treated as surplusage,.
and without deciding that it is of sufficient materality that if the
party undertakes to set it out he must set it out truly and correctly,.
we do not see any such variance between the proof and the aver-
ment as would justify us in excluding it from going in evidence
now. If it had named any different court; if it had given the·
"City Court" or any other other name than the Municipal Court,
which may well be connected with the term "court" afterwards,
then there might have been some ground for excluding it; but we
cannot see that as the indictment names virtually the Municipal
Court by reference to the subsequent part of the count showing·
that it was the Municipal Court aforesaid why it should not be·
admitted. We think it is a little too critical to exclude this testi-
mony on that ground, and, therefore, that it should be admitted,.
subject to exception and treatment of it in our charge to the jury
and in argument of counsel. It may yet turn out to be a material.
point.

*Ward* (interposing). And if material it would have to be·
proven as alleged.

ROBINSON, C. J. We will charge upon that.

After the testimony for the State was closed *Herbert H.
Ward,* for the defendants, requested the court to instruct the jury
to return a verdict of not guilty upon the ground that, as he con—

tended, at the time of the solicitation to leave the jurisdiction of the court, Jerry Sullivan was neither bound by recognizance to appear, nor was he under subpœna to appear before said court. Therefore he was not a witness in such sense that spiriting him away would be a criminal offence; *State vs. Early*, 3 Harring, 562; *King vs. Steventon*, 2 East 363; *Commonwealth vs. Reynolds*, 14 Gray 87; *State vs. Ames*, 64 Me. 386.

The crime is described as having been committed with respect to one Jerry Sullivan, whereas it was, in fact, Jerry W. Sullivan. As the name of a person is a part of the description of the crime it is a substantial variance. Strictness is properly required in order that the defendant may plead former indictment to a new prosecution. So also in order that the witness may be informed of the crime charged the allegation must correspond to the evidence intended to be produced; *United States vs. Keen*, 1 McLean 430; Whart. Am. Cr. L., § 598.

*Nicholson*, Attorney General (*Giles*, Deputy Attorney General, with him). The cases cited on the point of variance refer to the description of an instrument.

ROBINSON, C. J. The Court is clear upon that point. The only question is as to the other.

*Nicholson*, Attorney General, resuming. A surer method of punishing this offence is by proceeding for contempt, but in order that they may be sustained there must be process served. The theory of that proceeding is disobedience to the process. The offence charged here is obstructing public justice, and it is only necessary in order to establish it that the knowledge shall be brought home to the party charged; *State vs. Carpenter*, 20 Vt. 9; *State vs. Holt*, 84 Me. 509; s. c. 24 Atl. Rep. 951. It is even a question whether the recognizance taken to the September term did not hold over, and whether the witness being discharged from that term is not bound to attend at the present term; 2 A. & E. Encyc. L. 33.

ROBINSON, C. J., delivered the opinion of the court.

The State insists that the offence of obstructing public justice by persuading a witness to absent himself is established, and that the defendants are guilty in manner and form as they stand indicted.

But we have been requested to direct the jury to return a verdict of not guilty, because at the time of the solicitation, Jerry Sullivan was neither bound by recognizance to appear, nor was he under subpœna to appear. The contention is that in order to constitute the offence of spiriting away a witness the party persuaded must have been summoned or recognized to appear.

It is not denied that offence of spiriting away a witness is an indictable offense at common law. It was early recognized as being absolutely essential to the existence of courts and their efficiency in performing the functions for which they were created that such offenses against them should be punishable as crimes. The great object of their existence is the ascertainment of truth in its relations to the transactions of men, and they can only do so fairly and impartially when all persons having knowledge of the transactions inquired of are brought or allowed to come before them for examination without let or hindrance from any one. If interested witnesses are to be kept away by intimidation, persuasion or bribery then our courts cannot perform their high functions and the powers entrusted to them by the people will fall from their nerveless grasp. They will no longer preserve either their own self-respect or the respect of the community.

Accordingly, as it is stated in Russell on Crimes, Vol. 1, page 264: "All who endeavor to stifle truth and prevent the due execution of justice are highly punishable; and, therefore the dissuading or endeavoring to dissuade a witness from giving evidence against a person indicted is an offense at common law, although the persuasion should not succeed."

And it has been held by our own Court in the case of *State vs. Early*, 3 Harring. 562, that the party who spirits away a witness, and thus obstructs the courts of justice, is equally guilty whether the evidence of the witness would be material or not.

Nor do we think that this offence can only be committed where the witness has been legally summoned or is at the time bound by recognizance to appear.   The offence is committed not against the process of the courts, but against the sole object and purpose of their existence and the reason of their being, which, as we said before, is the ascertainment of the truth; and it is indictable because it is an attempt to stifle the truth and not because it is a contempt of any process of the courts.

We believe that the witness may have other relations to a case than those of being actually summoned or recognized which will render his being spirited away obnoxious to the law.   It would, to our minds, be a monstrous doctrine that a party might be recognized to appear before the Grand Jury—might actually appear and give evidence as the most material witness in the case—and then because the case was continued without respiting his recognizance—might with impunity be spirited away and bribed to absent himself if it could be done before a subpœna was actually issued and served, and the party who bribed him go unpunished of justice because he had cunningly anticipated the officers of the law by a few days or a few hours even.

Nor are we without authority for this view—we quote from the case of the *State vs. Keyes,* 8 Vermont 66—says Redfield, Justice, in that case:

" The witness having once been examined before the Justice and recognized for his appearance to testify on the final trial cannot be presumed to be in doubt whether his testimony would be required on the final trial.   Knowing this, it would be grossly criminal in him corruptly to absent himself from the State or keep secreted, or in any other way avoid being summoned as a witness, whether his recognizance was or was not still in force.   The question here is not whether the witness has been guilty of a contempt in disobeying the process of this court, but whether there has been a corrupt attempt to obstruct the due course of public justice by ' spiriting ' away or preventing the attendance of a witness.   If the person induced to absent himself knew of his being a witness and was in-

duced to absent himself the offence was complete in him. If the respondent knew of his being a witness and about to be compelled in due course of law to attend the trial and endeavor to dissuade and hinder him therefrom in the language of the indictment his offence is complete. In this case knowledge is carried home to both. It will not do for a moment to admit that the respondent might anticipate the officers of justice, and secrete, bribe or intimidate State witnesses from attending the trial of public prosecutions and not be liable for any act done until a subpœna had been legally served upon the witness. This view will leave untouched the most corrupting field for offences of this character."

It is contentended that this case does not expound the law properly, but we have been unable to find a single case which impeaches or conflicts with it in the slighest degree. It is published in 30 American Decisions, 450. It is cited by Bishop in his work on Criminal Law, and Wharton in his work on Criminal Law, Vol. 2, section 2287 in giving illustrations of obstructions to public justice says :

" And to dissuade a witness from attending the trial of a cause even through such witness had not been served with a subpoena is indictable," and he gives this case as his authority. It is cited as the law in a note to Chitty's Criminal Law and in a note to Russell on Crimes. It is cited without a word of explanation or dissent in both the cases cited by the learned counsel—that is in *Commonwealth vs. Reynolds*, 14 Gray 87, and in *State vs. Ames*, 64 Maine. And when the case of *Commonwealth vs. Reynolds* is published in American Decisions, Vol. 74, page 665, the learned editor gives the Vermont case as stating the law that the witness need not at the time be served with subpoena to appear. And finally the Maine court in 1892 (seventeen years after the case of *State vs. Ames* was decided by them) in the case of *State vs. Holt*, 84 Me. 509, say : " In *State vs. Keyes*, 8 Vermont, 57, in a well considered opinion by Mr. Justice Redfield the court held that it has always been an indictable offense at common law to attempt to prevent the

attendance of a witness before a court of justice, although no subpoena for the witness had been served or issued."

We do not know of any case that has received a higher recognition as being a true deliverance of sound law than has the case of *State vs. Keyes* in 8 Vermont, and we apply it as such to the case we are now trying.

In view of the fact that at the time of the alleged solicitation it was well known to both the defendants that Jerry Sullivan had been a material witness in the case before the Grand Jury and was about to be again summoned as a witness to the November term, we must decline to direct the jury to render a verdict of not guilty.

*Ward*, for the defendants, asked the Court to instruct the jury that one who takes a bribe is equally guilty with one who gives it, and that the evidence of Sullivan in this case must stand upon the footing of the evidence of an accomplice to the effect that the jury should not convict upon the unsupported testimony of an accomplice, and that they should be advised by the Court to acquit the prisoner unless the testimony of the accomplice is corroborated not only as to the circumstances of the offence, but also as to the participation of the accused in the transaction.

ROBINSON, C. J. (charging the jury.)

The case you are impaneled to try is that of an indictment against John J. Horner and John T. Spring for obstructing justice by persuading one Jerry Sullivan to depart from the jurisdiction of this court, he, the said Jerry Sullivan, being at the time a proposed witness in the case of the State against James W. Horner, the brother of John J. Horner, one of these defendants.

In every case there are some undisputed facts that must be taken as proved. In the present case it is not denied—indeed it is shown by the record produced—that on the 29th of last June James W. Horner was charged in the Municipal Court of this city with selling intoxicating liquor to Jerry Sullivan, a minor; that he was then held in recognizance to answer the charge at the Sep-

tember term of this court—that is, of the Court of General Sessions for this county; that Jerry Sullivan was also then held as a witness to appear against him; that Jerry Sullivan did appear against him at the September term, and that an indictment was then found against James W. Horner upon the testimony of Jerry Sullivan and others, which indictment was not then tried, but was continued until the November term; that the November term began on the 21st of that month, and that on the 18th a supœna was issued for Jerry Sullivan and other witnesses in the case against James W. Horner and placed in the hands of William T. Hamilton, who says he was working for the Sheriff; that this supœna was returned " served " as to the other witnesses, but "*non est*" as to Jerry Sullivan, Mr. Hamilton saying that he was unable to find him in November, although he had served a previous summons upon him in September; and that Jerry Sullivan appeared in the Court of General Sessions on Tuesday, the 22d of November, and that some time during the term James W. Horner pleaded guilty to the indictment. These are some of the facts of the case which are undisputed.

You have heard the testimony of Jerry Sullivan as to the reason why he could not be served with the subpœna by Mr. Hamilton. He says that he was bribed and induced to leave and get beyond the jurisdiction of the court by the defendants, John J. Horner and John T. Spring, and if you believe that evidence, the defendants are guilty of the offense alleged in the indictment and ought to be so found by you. Do you, or should you believe that evidence? The counsel for the defendants says you should not, because it is contradicted by the testimony of Charles H. Clayville in a material point and also because it is the evidence of an accomplice. You are to judge of the weight to be given to the contradictions between the testimony of Mr. Clayville and the witness, Jerry Sullivan, and are to determine which one you will believe and what confidence you are to place in the other statements of Jerry Sullivan, if you believe he has falsified in his narration of the conversation with Mr. Clayville.

The law as to the testimony of accomplices has been laid down in many cases in this court. The testimony of an accomplice ought to be received with great caution, and while the jury may, they ought not to convict an accused upon the testimony of an accomplice alone, unless that testimony is corroborated in some one material point. The State claims that the testimony of Jerry Sullivan, granting that he may be included under the term accomplice and that his testimony comes into the case with that character, is corroborated by other proof in the case, and chiefly by the fact that he was not in the city when Hamilton sought for him and could not be reached by the process of the Court. You alone are the judges as to what weight you will give to this corroboration. You must remember that the defence assails his credibility not only by charging that he was an accomplice, but also by charging that they have flatly contradicted him in a material point by the testimony of Mr. Clayville.

If from the testimony as presented by the other witnesses you are in doubt as to the guilt of the accused, then you may take into consideration the evidence of the witnesses as to their good character, and you may consider whether it is more likely under all the circumstances of this case that Jerry Sullivan should be testifying to untruths, than that the defendants being men of good character should be guilty of the offence with which they are charged.

Finally, if you have a reasonable doubt of the guilt of the accused, you should acquit them.

Gentlemen, we are not willing to decide that this is what is called in law an infamous offence, but we say to you that the question of whether it is or not has nothing to do with the guilt or innocence of the accused, and ought not to influence your verdict. It is a crime which strikes at the very foundations of public justice, and which would be most likely to be known only to the few engaged in it, and in no case ought persons who are guilty of the offence to go unpunished. But every man is presumed to be innocent until he has been proved to the satisfaction of

a jury of his peers to be guilty. In this case, as in every other case, you are the sole judges of the testimony.

If you believe the testimony produced on the part of the State, then the accused are guilty of the offence with which they are charged, and your verdict ought to be guilty in manner and form as they stand indicted. If you disbelieve that testimony, then you should return a verdict of not guilty. You alone are to decide.

*Verdict not guilty.*